# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32618

————————————

## UNITED STATES
*Appellee*

v.

## Enoch A. PACHECO
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 September 2020

————————————

*Military Judge:* Charles G. Warren.

*Sentence:* Sentence adjudged 2 April 2019 by a SPCM convened at Minot Air Force Base, North Dakota. Sentence entered by military judge on 2 July 2019: Bad-conduct discharge, confinement for 57 days, reduction to E-1, and a reprimand.

*For Appellant:* Captain Alexander A. Navarro, USAF.

*For Appellee:* Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with his pleas pursuant to a plea agreement, of desertion in

violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885.[1] The military judge sentenced Appellant to a bad-conduct discharge, 57 days of confinement, reduction to the grade of E-1, and a reprimand. The plea agreement had no impact on the convening authority's ability to affect the adjudged sentence.[2]

On appeal, Appellant raises a single assignment of error: whether Appellant is entitled to sentence-appropriateness relief due to post-trial delay. Specifically, Appellant claims that his due process rights were violated when his case was not docketed with this court within 30 days of the convening authority's action as required by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We find no error that resulted in material prejudice to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant's trial concluded on 2 April 2019. On 19 April 2019, the convening authority signed a decision on action memorandum in Appellant's case. The entry of judgment (EoJ) was signed on 2 July 2019, and the court reporter certified the record of trial (ROT) on 3 July 2019. The Government provided via sworn declaration that it took the Government approximately 46 days to serve the ROT on Appellant.[3] Appellant eventually received the ROT on 13 September 2019, and the ROT was docketed with this court six days later, on 19 September 2019.[4] Appellant did not object to the delay or assert his right to timely review prior to 22 April 2020.

---

[1] All references to the Uniform Code of Military Justice and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The plea agreement limited confinement to a maximum of 60 days, with no other limitations on punishment.

[3] Since the issue was raised in the record but was not fully resolvable by those materials, the affidavits submitted by the Government and Appellant were considered consistent with *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

[4] On 26 May 2020, the Government submitted a declaration to this court from Technical Sergeant (TSgt) AF, the paralegal on Appellant's case. TSgt AF stated that the ROT was originally mailed to Appellant on 30 July 2019 to the address Appellant originally provided after his trial concluded. On 13 August 2019, Appellant provided a new mailing address, and another copy of the ROT was mailed to Appellant on 15 August 2019. TSgt AF attempted to confirm Appellant's receipt of the ROT on 20 August 2019, 27 August 2019, 5 September 2019, and 10 September 2019. On 11 September 2019, TSgt AF received a third mailing address from Appellant, and another copy of the ROT was mailed to Appellant on 12 September 2019. On 13 September 2019, Appellant received a copy of the ROT. On 15 September 2019, TSgt AF received the signed receipt via email from Appellant.

In his 22 April 2020 declaration before this court, Appellant claims that the delay in docketing his case with this court has negatively impacted his ability to find employment due to the fact that he cannot provide potential employers with the final characterization of his service. Furthermore, Appellant claims that the delay in the outcome of his appeal has caused him "particularized anxiety and apprehension" due to his lack of employment, and that his anxiety and apprehension has "been made worse due to the COVID-19 pandemic." Finally, Appellant asks this court to grant relief by setting aside his punitive discharge.

## II. DISCUSSION

This court reviews de novo whether an appellant's due process rights are violated because of post-trial delay. *Moreno* 63 M.J. at 135 (citations omitted). In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d). *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd,* 75 M.J. 264 (C.A.A.F. 2016).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43. Specifically, the CAAF established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the Court of Criminal Appeals within 30 days of the convening authority's action, or (3) the Court of Criminal Appeals did not render a decision within 18 months of docketing. *Id.* at 142.

We note at the outset, Appellant deserted his unit on 4 February 2019 and was apprehended two days later on 6 February 2019. The convening authority referred the charge and specifications to trial by special court-martial on 27 February 2019. Accordingly, Appellant's court-martial is subject to the substantive provisions and sentencing procedures of the UCMJ and procedural provisions of the Rules for Courts-Martial (R.C.M.) provided for in the 2019 version of the *Manual for Courts-Martial*. We also agree that the due process right to timely post-trial and appellate review the CAAF recognized and sought to safeguard in *Moreno* endures under the new post-2019 procedures.

As we recently noted in *United States v. Livak*, ___ M.J. ___, No. ACM S32617, 2020 CCA LEXIS 315, at *6–7 (A.F. Ct. Crim. App. 14 Sep. 2020), "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine a facially unreasonable delay under the new procedural rules," but the aggregate standard threshold established

by the majority in *Moreno* of 150 days from Appellant's sentence to docketing is still applicable in determining a facially unreasonable delay.

In the case before us, the entire period from the end of Appellant's trial to docketing with this court took 170 days. Since this is over the 150-day threshold discussed above, we find there was a facially unreasonable delay and must now assess whether there was a due process violation. In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno*, 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533) (additional citation omitted).

The first factor, the length of the delay, moderately weighs in Appellant's favor; the Government exceeded the *Moreno* aggregate standard for a presumptively unreasonable delay by 20 days.

The second factor concerns the reasons for the delay. In this case, 46 of the 170 days it took to docket this case was directly attributable to the Government's repeated attempts to serve the ROT on Appellant in accordance with R.C.M. 1112(e)(1).[5] In this case, the Government endeavored to serve the ROT three different times, to three different addresses at Appellant's direction, before the ROT finally reached Appellant. Once Appellant received the ROT, it was promptly docketed with this court within six days. As we have no evidence of, nor has Appellant alleged any, bad faith on behalf of the Government, we determine this factor favors the Government.

The third factor, whether Appellant exercised his right to speedy appellate review, also weighs in the Government's favor. Appellant's counsel conceded in his submission to this court that Appellant never objected to the delay or asserted his right to timely review until his filing with this court on 22 April 2020.

As to the final factor, prejudice arising from post-trial processing delays, *Moreno* sets forth three interests to consider. 63 M.J. at 138–39. The first, oppressive incarceration, does not apply to Appellant because he does not prevail in his substantive appeal. *See id.* at 139.

The second, anxiety and concern, is also not applicable. Appellant states he has "particularized anxiety and apprehension" as he awaits the outcome of his

---

[5] R.C.M. 1112(e)(1) states that "a court reporter shall, in accordance with regulations issued by the Secretary concerned, provide a copy of the certified record of trial free of charge to" the accused.

case, due to his lack of employment. He asserts his search for employment has been made more difficult because some employers have asked for the characterization of his military service which he cannot provide until his appellate review is complete. Appellant also asserts that he anticipates other potential employers will also ask for this information. Appellant, however, has failed to provide any documentation of this fact from potential employers, much less established they have a hiring criteria in place or what the rationale would be for having such criteria. Therefore, we are unable to determine whether these employers want to wait and see if Appellant's conviction or punitive discharge is overturned because they only wish to hire applicants without such criminal records, or if they have a blanket policy against hiring applicants who are undergoing some sort of appellate review for some reason. Without explaining either the potential employers' policies or how the particular facts of his case operated to preclude his employment, Appellant has not articulated prejudice arising from delay in his appellate review. Although Appellant has not specifically set out the employers' concerns, we suspect they are far more likely concerned with whether or not Appellant's conviction or punitive discharge is upheld on appeal, rather than the fact Appellant's case is undergoing appellate review. Appellant pleaded guilty at trial, and on appeal he has not asserted any legal infirmity with his trial save the length of post-trial processing. We are not setting aside his conviction or his punitive discharge, and Appellant has failed to explain how the mere pendency of appellate review proceedings has operated to deny him employment opportunities.[6] Finally, Appellant's complaint does not rise to the level of "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140.

The third and final factor, impairment of an appellant's ability to present a defense at a rehearing, is mooted by the fact we are not setting aside Appellant's conviction in this guilty-plea case. *See id.* Prejudice, then, weighs in the Government's favor.

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the 170 days that elapsed between

---

[6] Appellant asserts his anxiety and apprehension has been made worse due to the COVID-19 pandemic which is especially bad in the city he lives, but he does not explain how his appellate review is connected to the pandemic or how a speedier appellate review would have lessened the pandemic impacts on him.

the conclusion of trial and docketing are not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 744, we conclude it is not.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), Uniform Code of Military Justice, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.[7]



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[7] We note the Statement of Trial Results in this case failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has made no claim of prejudice, and we find none. *See United States v. Moody-Neukom,* No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).